SMITH *v.* SMITH.

No. 7053. MAY 15, 1929. REHEARING DENIED JULY 19, 1929.

*Austin & Boykin,* for plaintiff in error.
*Branch & Howard,* contra.

GILBERT, J. Except the fourth, none of the headnotes require elaboration.

■ The seventh ground of the motion for new trial is as follows: The defendant offered in evidence a letter addressed to G. E. Houston, P. O. Box 396, Atlanta, Ga., and also, with the address on the envelope in pencil, "30 West Eleventh Street." The letter so tendered was in words and figures as follows: "Sunday. My dearest & Only Sweetheart:—Your special was so nice to-day. So, of course, I feel improved. Then too my boil is on the road to recovery, and have both eyes open to take in the beautiful sunshine that is all here to-day. Yesterday, however, I was some sick, could hardly make it home, then right to bed where I remained until this morning. Had fever and all yesterday, but feel real much better to-day. Dear, what made you send that rent? I considered that included in the large bill and was very much surprised at getting the other. Don't think I am hoggish, dear. All I want is enough to get along with, and don't think I am trying to *use* you for a good thing, for you are my dearest love and that's my attitude towards you. Another thing, dear—I didn't quite get the connection when you said, if I ever decided to do anything improper I'd ask you. Now, dear, not for one moment must you have the idea that I even consider such things, and so long as you keep me on a pedestal for goodness I shall never betray that trust, for I know many times you have been deceived in *woman,* so in your life I want to be *the* exception—so you must never let such a thought enter your mind, for you know *our* thoughts and ways are so closely *allied* that you should ever have such ideas I might grasp it on a *thought wire* and run away with it. The things I hear in New York has sufficiently disgusted me with the crooked path to ever wander from the straight. I hope, dear, my suggestion to meet *you* didn't put that idea into your head, for the suggestion was formerly yours, and so often have you told me to look upon you as *all mine* and that you cared so awfully much for me that you would always protect me from any harm, so, under those circumstances with my devotion for you plus the separation of 1/3 of a whole year prompted me to suggest seeing you, especially as it will be the best chance on account of a longer holiday and the prospect of Mary coming the first part of June. Don't think I am scolding you, dear, or fussing, but I want you to hold

that same high opinion of your little girl who really and truly aims to be good and love you best always. I have already answered your question about the ole man—haven't heard anything further —think he is a bad egg—don't you. Had a little note from Miss R. yesterday, inquiring how I was getting along and stating that she had been working very hard of late. Guess I will call on them some Sun. afternoon. Well, Miss C. got the grease & mud off my hat, and I have a nice new blue serge suit—had it made by a tailor but only $80. So that's as cheap as you can get them at stores. So guess I'll doll up and see how I look (boil & all) for the day is beautiful and think a walk or movie *would* make me feel better. Bless your heart; I hope you can get Harry off and meander up here. All the boat trips are on and we might take one as you are so crazy about such & I ditto you in everything (cept me). Be a good darlin and don't ever get angry with your lil girl 'cause she loves you all the time (even when she scraps) and always has before her the code which you wish for her to follow. I am thinking when we meet it will take the entire time to get that one around the world and back a couple of times. Here's *one way* rite now. Yours ever.

"Say Dear—I want to send my liberty bond for you to put in the box. Do you think it safe to enclose in letter without registering, or shall I keep it until you come. I think may be safest to send there than keep here, as you know sometimes I am careless bout such things."

When this letter was tendered in evidence, counsel for the plaintiff made this objection: Mr. Branch: "We object to that letter." The court thereupon sustained this objection in the following ruling: "I don't think that letter is admissible. I don't think it has been connected up with Mr. Smith close enough to be binding on him." Movant contends that the court erred in sustaining said objection and erred in not admitting said letter to the consideration of the jury, for the following reasons and grounds, to wit: Because said evidence offered was relevant and pertinent to the issues involved, and because of the following evidence at the trial which connected the plaintiff, W. B. Smith, with said letter. At the trial Mrs. Lillie B. Smith testified that she had intercepted this letter, and swore positively that the address on the envelope and the letter itself was in the handwriting of Miss Gladys E. Houston. The

plaintiff, W. B. Smith, while on the stand testifying in his own behalf was cross-examined as to this letter by counsel for defendant as follows: "Mr. Austin: Q. Mr. Smith, I will get you to examine another letter, post-marked New York, May 13th, 5 p. m., 1919, addressed to G. E. Houston, post-office box 396, Atlanta, Ga., with the pencil mark "West Eleventh Street" on the back. I will get you to examine the envelope and state whether or not that is Miss Gladys Houston's handwriting. A. I could not tell you. I don't know. Q. Does it look like her handwriting? A. It is similar to it; I would say that. Q. Isn't it true, Mr. Smith, you had a key to post-office box 396? A. I don't remember what box it was. I had a key to a box that Miss Houston rented over there, but what number it was I don't remember. Q. While she was in New York? A. I don't know where she was; she gave me the key and left here, and she said if any mail came for me to please forward it; forward it to her in New York. Q. You got mail out of that box? A. For myself, I never did. Q. Didn't you get a letter? A. I don't think I ever got but one letter out of there, and forwarded it to her." The letter offered contained a reference by the writer to rent sent to her by the person to whom the letter was written, as follows: "Dear, what made you send that rent? I considered that included in the large bill, and was very much surprised at getting the other. Don't think I am hoggish, dear. All I want is enough to get along with, and don't think I am trying to use you for a good thing, for you are my dearest love and that's my attitude towards you." At the trial the plaintiff, W. B. Smith, was cross-examined by counsel for defendant as follows: "Mr. Austin: Q. Didn't you get the check from Sharp & Boylston for Miss Houston's rent and send it to her? A. I don't remember, but I believe it was sent direct to her, but I am not clear on that point. Some of it may have been sent to me, but I don't remember." Movant respectfully contends that the evidence was sufficient to authorize the jury to find that this letter was written by Miss Gladys E. Houston to the plaintiff, W. B. Smith, intended for him, and, as prearranged between them, the letter was addressed by Miss Houston to herself to P. O. Box 396, W. B. Smith having the key to said box and access to same; said evidence being material evidence for the defendant, and its exclusion from the evidence was prejudicial to defendant's case.

The cross-petition of the defendant alleged that her husband neglected her for the society of other women; that he lavished presents on other women, and designated one of these women as "Miss. G.," who, with the connivance of the husband, rented post-office box 396 in the Atlanta post-office, and "wrote letters from New York to the plaintiff addressed to herself to this box. By prearrangement the plaintiff, W. B. Smith, had the key to this box and free access to the mail carried therein, and by this deceit and trickery the plaintiff and this woman carried on a clandestine correspondence." There was evidence tending to show that the letter offered in evidence was from the "Miss G." mentioned in the cross-petition and was in her handwriting. The plaintiff admitted that he had a key to a post-office box rented by Miss Houston, shown by the evidence to be the person referred to as "Miss G." The evidence of the plaintiff was plainly evasive on the subject of the post-office box and the letter. In connection with other evidence in regard to Miss Houston and the plaintiff, the jury would have been authorized to find that the allegations of the petition, quoted above, were established. In fact no other rational construction seems possible. It was error to disallow the testimony, and a new trial must result. This ruling is not in conflict with the ruling made in *Cocroft* v. *Cocroft*, 158 *Ga.* 714 (4) (124 S. E. 346). In that case the letter was not identified either by handwriting or otherwise. None of the cases cited in the *Cocroft* case contain rulings contrary to the ruling now made.

*Judgment reversed. All the Justices concur.*

ON MOTION FOR REHEARING

Considering all of this evidence, we think the jury would have been authorized to find that the letter sought to be introduced was a part of the general understanding and correspondence between Smith and Miss Houston and was admissible as throwing light upon the conduct of plaintiff. Therefore, after another consideration of the evidence in the light of the fourth headnote in the *Cocroft* case, we are satisfied that the trial court erred in repelling from the evidence the letter in question. Accordingly, the motion for rehearing is denied.